A93A0469. ZUMBADO v. LINCOLN PROPERTY COMPANY.
A93A0613. ALLSTATE INSURANCE COMPANY v. ZUMBADO.

(433 SE2d 301)

ANDREWS, Judge.

Zumbado appeals the grant of summary judgment to Lincoln Property Company d/b/a Woodland Apartments (Lincoln) and Allstate, her uninsured motorist carrier, cross-appeals the denial of its motion for summary judgment.

Viewed with all favorable inferences and reasonable doubts in favor of Zumbado, the opponent of summary judgment, OCGA § 9-11-56; *Eiberger v. West*, 247 Ga. 767, 769 (1) (281 SE2d 148) (1981), the evidence was that Lincoln built Woodland Apartments in 1983. Lincoln asked the City of Smyrna to investigate the traffic flow near the entrance to the complex and provide some type of traffic regulation for the intersection created by the entrance and the four-lane roadway. In response, Smyrna installed a vehicle approaching signal device across the street from the entrance. As one exited the complex, the device, consisting of two yellow lights, would flash when traffic was approaching from the left. The approach from the left was uphill and included a dip in the roadway where traffic was not plainly visible to one exiting the complex. Because Smyrna's 1984 budget was insufficient to fund the device that year, the city requested and Lincoln paid a fee to cover the cost of installation. Lincoln did not make any recommendations concerning the nature of the device to be installed or its location and did not assist in the installation. Lincoln did not own or have any legal interest in the property where the device was installed. Lincoln's maintenance staff had no duties or responsibilities regarding the device. One of the maintenance men had noticed that, on some occasions, the device would not flash when traffic was approaching, although he did not report this to his superiors.

On October 31, 1989 about 7:00 a.m., Zumbado was driving to work with Koski as a passenger. She used the exit daily, turning left on her way to work and was familiar with the intersection. There was an alternative exit to the complex and she could also get to work by turning right and using an alternate route. As related by her, she remembered getting to the front of the entrance, "checking my right, being sure that there were no vehicles approaching, looking at the [signal device], it wasn't flashing, checking my right a second time, looking at the sign again, it still was not flashing, and proceeded to make my left hand turn." Koski was looking to the right during the exit.

Everett, coming from the left, hit Zumbado at the driver's door, causing her serious injuries. Everett, in the curb lane, veered to his left while he was braking, and the point of impact was in the left lane near the centerline. Everett left approximately 100 feet of skid marks.

The original complaint alleged that Lincoln failed to notify Zumbado of the malfunctioning of the device, even though it had knowledge of the malfunctioning through its agents. The complaint was amended to add counts alleging negligent placement of the entrance, creation of an unreasonable risk to those exiting, and maintenance of a nuisance by virtue of an inadequate sight line to the left.

On Lincoln's motion, the court concluded that Lincoln owed no duty to the users of the signal device; there was no evidence that Lincoln exerted any control over the public street so as to have a duty to warn of the dangerous line of sight condition; and Zumbado had equal knowledge of the hazardous condition.

On Allstate's motion, based on Zumbado's claimed failure to exercise ordinary care for her own safety, the court concluded that genuine issues of material fact remained regarding Everett's speed at the time of the crash and the adequacy of Zumbado's lookout before pulling into the street.

### Case No. A93A0613

1. With regard to Allstate's motion, the issue of the comparative fault of Zumbado and Everett is not subject to summary adjudication on the record before us. The speed limit in the area was 40 or 45 mph and the length of the skid marks left by Everett provide evidence from which a jury could conclude that his excessive speed could have contributed to the accident, as well as the fact that he could have missed Zumbado if he had swerved to the right instead of the left. These matters create issues for the jury's resolution. OCGA § 51-11-7; *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810) (1992).

### Case No. A93A0469

2. Zumbado contends the court erred in finding that Lincoln fulfilled its duty to maintain safe approaches to the complex, as required by OCGA § 51-3-1.

(a) The trial court correctly concluded that Lincoln had no responsibility for installing or maintaining the traffic signal device. That duty is vested in the City of Smyrna by OCGA § 32-6-50 (c). See *Crouch v. CSX Transp.*, 203 Ga. App. 618, 619 (417 SE2d 216) (1992); *Reed v. Ed Taylor Constr. Co.*, 198 Ga. App. 595, 597, n. 2 (402 SE2d 346) (1991). It is in fact unlawful for anyone other than those governmental entities listed in OCGA § 32-6-50 to erect traffic control devices. OCGA § 32-6-51 (a).

(b) Further, there was no evidence that Lincoln had exercised any control over the roadway so as to have assumed the duty to warn of any dangers associated with it.

" 'If the approach is a public way(, the occupier's) duty under

OCGA § 51-3-1 is to exercise due care within the confines of his right in the public way. (The occupier's right) in the public way may be quite limited but nonetheless exist(s).' *Todd* [*v. F. W. Woolworth Co.*, 258 Ga. 194, 196 (1) (366 SE2d 674) (1988)]. In other words, the duty over a public way is circumscribed by the rights in it the occupier has exercised." *Reed*, supra at 597. There was no evidence that Lincoln or its agents and employees used the public road in a manner different from the general motoring public. Id.

(c) Finally, Zumbado's equal knowledge of the condition of the exit and the dangers presented by going out there instead of using one of the alternative exits mandated the summary judgment to Lincoln.

Zumbado had repeatedly used the exit and was fully cognizant of the "blind spot" and the danger of approaching traffic, yet she voluntarily chose to exit there. " 'This is a "plain, palpable, and indisputable" case not calling for resolution by a jury.' " *Moore v. Service Merchandise*, 200 Ga. App. 463, 464 (408 SE2d 480) (1991). See, e.g., *Wells v. C & S Trust Co.*, 199 Ga. App. 31 (403 SE2d 826) (1991); *Roth v. Wu*, 199 Ga. App. 665, 666 (405 SE2d 741) (1991).

*Judgments affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 2, 1993 —
RECONSIDERATION DENIED JUNE 24, 1993 —

*Downey, Cleveland, Parker, Williams & Davis, Russell B. Davis, Lance T. McCoy*, for Allstate.

*Carter & Ansley, Robert A. Barnaby II, Rebecca J. Schmidt*, for Lincoln.

*Murray & Temple, William D. Temple, Sr.*, for Zumbado.