A10A0861. WESTON et al. v. DUN TRANSPORTATION
& STRINGER, INC. et al.
(695 SE2d 279)

ELLINGTON, Judge.

After Thomas Weston's wife, Janet, died in a vehicular accident, Weston brought this wrongful death action in the State Court of Glynn County against Yancey Brothers, Inc. ("Yancey"), Douglas Electrical and Plumbing Company ("Douglas"), Dewey Harper, Dun Transportation & Stringer, Inc. ("Dun"), and Dale Montes.[1] After a hearing, the trial court granted the appellees' motions for summary judgment. Weston appeals, contending material questions of fact remain that preclude summary judgment. For the reasons explained below, we affirm.

On a motion for summary judgment under OCGA § 9-11-56,

the defendant, as the moving party, may prevail by "piercing the plaintiff's pleadings," i.e., demonstrating that [the] plaintiff will be unable to prevail at trial, even when all doubts are resolved in favor of the plaintiff, because there is no issue of material fact as to at least one essential element of the plaintiff's prima facie case.

(Citations omitted.) *Garrett v. NationsBank*, 228 Ga. App. 114, 115

---

[4] See *Ahmed v. Clark*, 301 Ga. App. 426, 428 (688 SE2d 361) (2009).

[1] Weston also named as a party defendant Dun's insurer, Liberty Mutual Insurance Company.

(491 SE2d 158) (1997). In the alternative, the defendant may prevail

> by presenting evidence which establishes a prima facie affirmative defense. In so doing, the defendant, as the moving party seeking summary judgment, may not rely on inferences from the evidence presented, because: (1) the defendant would have such burden of proof at trial; and (2) the allocation of favorable inferences between the parties is a jury question. Once the defendant satisfies its burden of proof by presenting evidence to support each element of the affirmative defense, the same burden of proof it would have at trial, the burden of production of evidence shifts to the plaintiff, who will survive summary judgment in the same fashion that she would survive a motion for directed verdict at trial, i.e., by presenting *any* evidence which creates a jury issue on an element of the affirmative defense. However, if the plaintiff is unable to meet this burden of production, the defendant is entitled to summary judgment as a matter of law.

(Citations omitted; emphasis in original.) Id. at 116.

Viewed in the light most favorable to Weston, the record shows the following undisputed facts. At about 10:00 a.m. on August 17, 2006, the decedent drove eastbound on Cut Off Road in Glynn County toward an intersection where Cut Off Road dead-ends into Georgia State Route 303 ("SR 303"). The decedent approached the stop sign for Cut Off Road traffic and then began a left-hand turn to go north on SR 303, which had the right-of-way. Her path required her to cross a southbound deceleration (right-turn) lane and a southbound through lane. A tractor-trailer traveling in the southbound through lane struck the decedent's car broadside, killing her instantly.

At the time of the accident, a yellow Caterpillar front-end loader was parked westbound on Cut Off Road. The loader had stalled as Dewey Harper, driving in the course of his employment with Douglas, turned onto Cut Off Road from SR 303. The loader's back end blocked SR 303's southbound deceleration lane. For a driver who was traveling eastbound on Cut Off Road and stopped at the stop sign, the loader prevented the driver from seeing traffic approaching the intersection from the driver's left, southbound on SR 303. Cut Off Road is straight and flat in that area; the loader was visible to drivers traveling eastbound on Cut Off Road for one quarter mile before reaching the stop sign. It is undisputed that the decedent could have reached her destination by reversing course, going westbound on Cut Off Road, and then taking Blythe Island Drive to reach northbound

SR 303, or by turning right into the parking lot of a convenience store that is at the intersection of SR 303 and Cut Off Road, driving south across the parking lot, and then turning left onto SR 303 from a point where the stalled loader did not obstruct her view of southbound traffic.

At the time the decedent reached the stop sign, Dale Montes was driving a tractor-trailer southbound on SR 303 in the course of his employment with Dun. Although the speed limit on SR 303 was 55 mph, Montes approached the intersection well below that speed. Another driver, who was approximately one hundred yards behind the decedent on Cut Off Road, saw the decedent's brake lights come on as she approached the stop sign. He saw her brake lights flash again, and then the decedent drove quickly into the intersection and into the path of Dun's tractor-trailer. For purposes of summary judgment, we view this evidence in favor of Weston and his position that a jury could infer that the decedent came to a complete stop at the stop sign, realized that the loader obstructed her view of southbound traffic, slowly inched forward to get a better view, saw that the tractor-trailer was bearing down on her, and, believing that her car's front end was too far into the southbound lane for the tractor-trailer to avoid, suddenly accelerated in hopes of getting out of its way.

Weston contends that the appellees negligently caused the wreck as follows. Yancey is a heavy equipment repair shop to which Douglas took the loader in early August 2006 for repair because the machine was shutting down during use. Yancey released the loader to Harper on the morning of the accident, August 17, 2006. Weston contends that a Yancey employee negligently failed to properly reassemble the loader's fuel rack and that caused the loader to have a tendency to stall. Weston also contends that Yancey's employees negligently failed to do field testing to determine whether the loader was safe to drive on the highway, yet represented to Harper that the loader was ready to return to service.

With regard to Harper and his employer, Douglas, Weston contends that Harper negligently continued to drive the loader after it had stalled once, before the intersection of SR 303 and Cut Off Road. In addition, Weston contends Harper negligently failed to direct traffic or to warn motorists, including the decedent, of the obstruction after the loader broke down.

With regard to Montes and his employer, Dun, Weston contends Montes negligently drove too fast for conditions, given the presence of the loader, and "recklessly tested a known danger," that is, by not slowing enough to be able to stop if a driver blindly inched out from the stop sign on Cut Off Road into the intersection.

1. Weston contends that, even if the decedent's negligence

contributed to her death, there is evidence that each of the appellees was negligent and that only a jury can resolve the issue of the effect of the decedent's negligence relative to the negligence of the appellees. In a related argument, Weston contends that, even if the decedent could have avoided the accident by exercising ordinary care, there is evidence that each of the appellees' conduct was wilful or wanton, and, therefore, the decedent's failure to exercise ordinary care does not bar Weston's recovery.

Under Georgia's doctrine of comparative negligence, where the negligence of the plaintiff joins with the negligence of the defendant in proximately causing the plaintiff's injuries, the plaintiff will be precluded from recovering against the defendant, if the negligence of the plaintiff is equal to or greater than that of the defendant, *or,* if the negligence of the plaintiff is less than that of the defendant, the plaintiff's recovery of damages will be reduced in proportion to his or her negligence. *Garrett v. NationsBank*, 228 Ga. App. at 118. Under the doctrine of avoidable consequences, on the other hand, "[i]f the plaintiff by ordinary care could have avoided the consequences to himself [or herself] caused by the defendant's negligence, [the plaintiff] is not entitled to recover." OCGA § 51-11-7.

> The plaintiff must exercise ordinary care for [her] own safety, and must by the same degree of care avoid the effect of the defendants' negligence after it becomes apparent to [her] or in the exercise of ordinary care [she] should have learned of it. [The plaintiff] must make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her].

(Citation and punctuation omitted.) *Lowery's Tavern v. Dudukovich,* 234 Ga. App. 687, 690 (3) (507 SE2d 851) (1998). Under this doctrine, the plaintiff's negligence in failing to avoid the consequences of the defendant's negligence is deemed the sole proximate cause of the injuries sustained and, therefore, is a complete bar to recovery, unless the defendant wilfully and wantonly inflicted the injuries. *City of Winder v. Girone*, 265 Ga. 723, 724 (2) (462 SE2d 704) (1995); *Garrett v. NationsBank*, 228 Ga. App. at 117-118.[2] As with other affirmative defenses, the defendant has the burden of proving, either

---

[2] See also *Newman v. Collins*, 186 Ga. App. 595, 596 (1) (a) (367 SE2d 866) (1988) (physical precedent only) ("One who recklessly tests an observed and clearly obvious peril is guilty of lack of ordinary care and is guilty of such negligence which will be deemed the proximate cause of his resulting injury, and, in the absence of wilful or wanton misconduct by the defendant, will preclude his recovery.") (citations and punctuation omitted). See generally Charles R. Adams, Ga. Law of Torts, § 16-1 (2009-2010 ed.); Barbara J. Van Arsdale, Ga.

at trial or summary judgment, that the plaintiff by ordinary care could have avoided the consequences to himself or herself caused by the defendant's negligence. *Garrett v. NationsBank*, 228 Ga. App. at 116. Although the issue of whether the plaintiff exercised "due diligence for [her] own safety is ordinarily reserved for the jury, it may be summarily adjudicated where [the plaintiff's] knowledge of the risk is clear and palpable." (Citation omitted.) *Lowery's Tavern v. Dudukovich*, 234 Ga. App. at 690 (3).

In this case, the appellees identified record evidence supporting the affirmative defense of avoidable consequences under OCGA § 51-11-7. Specifically, the record shows that the decedent had negotiated the intersection of Cut Off Road and SR 303 multiple times over several years, that she understood that she was required to yield the right-of-way to any traffic on SR 303 when entering it from Cut Off Road, that she was aware that the traffic on SR 303, which often included logging trucks and other heavy vehicles, traveled at or above the posted speed limit of 55 mph, and that, when she pulled up to the stop sign on August 17, 2006, she could see the loader and knew that it blocked her ability to see southbound traffic on SR 303. Weston failed to come forward with any evidence that the decedent lacked knowledge of the danger she faced. Despite her knowledge of the open and obvious risk, the decedent elected not to change course but to move forward far enough into the southbound through lane of the highway that she reached a point of no return, as Weston contends, and suffered the tragic consequences of her misjudgment. Even assuming that each of the appellees was negligent, and that their negligence combined to create the hazard that the decedent encountered that day, the evidence established as a matter of law that the decedent in the exercise of ordinary care could have avoided the consequences to herself caused by the appellees' negligence.[3] Accordingly, the doctrine of avoidable consequences bars Weston's

---

*Jurisprudence: Personal Injury and Torts*, § 21.49 (updated February 2010).

[3] *Holcomb v. Norfolk Southern R. Co.*, 295 Ga. App. 821, 824-825 (1) (673 SE2d 268) (2009) (Because any ordinarily prudent person knows that walking across railroad tracks is subject to the dangers incident to the operation of trains on the track, and because the plaintiff failed to listen for a ringing bell or look for an approaching train until she stepped into the path of danger, the trial court properly granted the railroad's motion for summary judgment.); *Lowery's Tavern v. Dudukovich*, 234 Ga. App. at 690-692 (3) (Because the risk of falling is a foreseeable consequence of walking down an unfamiliar alley, opening a service door at the side of an unknown building, and stepping into a pitch-black doorway, the trial court erred in denying the premises owners' motion for summary judgment.); *Garrett v. NationsBank*, 228 Ga. App. at 119 (Because any reasonably intelligent and prudent person understands the risk of slipping when there is snow, ice, and water on pavement, and the plaintiff elected to run across the bank's parking lot despite the conditions, the trial court properly granted the bank's motion for summary judgment.); *Zumbado v. Lincoln Property Co.*, 209 Ga. App. 163, 165 (2) (c) (433 SE2d 301) (1993) (Where the plaintiff knew that she could not see oncoming traffic from one exit from a parking lot and knew that she could avoid the risk of using the blind exit

recovery unless the appellees wilfully and wantonly inflicted the decedent's injuries. *Lowery's Tavern v. Dudukovich*, 234 Ga. App. at 691 (3); *Garrett v. NationsBank*, 228 Ga. App. at 118.

"Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent." (Citations and punctuation omitted.) *Chrysler Corp. v. Batten*, 264 Ga. 723, 726 (3) (450 SE2d 208) (1994). The record in this case is devoid of any evidence from which a jury could find that any of the appellees acted with an actual intention to do harm or inflict injury. Further, although with the benefit of hindsight one can argue that each of the appellees could have taken some action that would have reduced the likelihood of the accident that ended the decedent's life, we conclude that, as a matter of law, Weston failed to identify any evidence from which a jury could find that the conduct of any appellee was so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent.[4]

Because the appellees carried their burden of presenting evidence to support the affirmative defense of avoidable consequences, and because Weston failed to come forward with evidence to show the existence of a disputed issue of material fact as to any element of the defense for jury decision, the trial court did not err in granting summary judgment in favor of the appellees. *Lowery's Tavern v. Dudukovich*, 234 Ga. App. at 691-692 (3); *Garrett v. NationsBank*, 228 Ga. App. at 119; *Zumbado v. Lincoln Property Co.*, 209 Ga. App. 163, 164 (2) (c) (433 SE2d 301) (1993).

2. Weston contends that Harper and another Douglas employee, James Barber, moved the loader a short distance before police officers arrived to investigate the accident, concealing the extent to which the loader blocked the deceleration lane at the time of the accident. In addition, Weston contends that Yancey employees Erskine Keller and Morris Freeman failed to make any written notes or computer entries regarding work they did on the loader after the accident. Weston contends that both of these acts constituted spoliation of evidence, giving rise to a presumption that the evidence would

---

by using another available route to reach her destination, the premises owner was entitled to summary judgment.).

[4] *Brazier v. Phoenix Group Mgmt.*, 280 Ga. App. 67, 73-74 (2) (633 SE2d 354) (2006) (A developer's failure to erect a fence around a shallow lake during development of the property did not as a matter of law constitute wilful and wanton misconduct where county officials inspected the lake and concluded a local ordinance did not require a fence around it.); *Trulove v. Jones*, 271 Ga. App. 681, 682 (1) (610 SE2d 649) (2005) (Where a visitor fell from an incomplete pool deck that lacked railings, the homeowner's conduct was not as a matter of law wilful and wanton.).

have established their negligence.[5] In light of our holding in Division 1, supra, this argument is moot.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED APRIL 21, 2010 —
RECONSIDERATION DENIED MAY 13, 2010 — 

*Killian & Boyd, Robert P. Killian*, for appellants.

*Howard & Whatley, Thomas G. Whatley, Jr., Drew, Eckl & Farnham, Brenda K. Katz, Hawkins & Parnell, Michael J. Goldman, Alan F. Herman*, for appellees.

---

[5] See OCGA § 24-4-22 ("If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted.").